## LOWE *v.* KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 174. Submitted March 24, 1896. — Decided May 18, 1896.

A person upon whose oath a criminal information for a libel is filed, and who is found by the jury, as part of their verdict acquitting the defendant, to be the prosecuting witness, and to have instituted the prosecution without probable cause and with malicious motives, and is thereupon adjudged by the court to pay the costs, and to be committed until payment thereof, in accordance with the General Statutes of Kansas of 1889, c. 82, § 326, and who does not appear to have been denied at the trial the opportunity of offering arguments and evidence upon the motives and the cause of the prosecution, is not deprived of liberty or property without due process of law, or denied the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States.

AN information, in the name and behalf of the State of Kansas, by J. V. Beekman, the county attorney of Chatauqua County, against one F. Keifer, for a criminal libel upon Sandy

Lowe, was filed September 28, 1889, in the district court of that county and State, and was afterwards, upon the defendant's motion for a change of venue, transferred to the district court of Elk county for trial.

Annexed to the information was the affidavit of Lowe, subscribed and sworn to before the clerk of the court, " that the allegations and averments contained in the foregoing information are true."

The General Statutes of Kansas of 1889 contain the following provisions:

By section 309 of chapter 31, regulating crimes and punishments, " In all indictments or prosecutions for libel, the jury, after having received the direction of the court, shall have the right to determine, at their discretion, the law and the fact."

By section 326 of chapter 82, establishing a code of criminal procedure, " Whenever it shall appear to the court or jury trying the case, that the prosecution has been instituted without probable cause and from malicious motives, the name of the prosecutor shall be ascertained and stated in the finding; and such prosecutor shall be adjudged to pay the costs, and may be committed to the county jail until the same are paid, or secured to be paid."

At the trial of this information, the court, in charging the jury, after reading these statutes, and giving directions as to the law of libel, further instructed the jury as follows:

" You will observe that section 326 aforesaid provides that the jury may in any case find that the prosecution has been instituted without probable cause and from malicious motives, and when the jury do so find it is their duty to state the name of the prosecuting witness in their finding, and in such case the prosecuting witness may be by the court adjudged to pay the costs in the case, and he may be by the court committed to the jail until the same are paid or secured to be paid; and in this case, if you are of the opinion that the provision of said section ought to be enforced, you are at liberty to and ought to enforce the same."

" You will observe from section 309, above quoted, that you

are, in your discretion, the judges of both the law and the fact of this case; and, this being so, we can only direct you as best we may to the law of the case."

The jury returned the following verdict: "We, the jury impanelled and sworn in the above entitled case, do upon our oaths find the defendant not guilty; and we do further find that this prosecution was instituted without probable cause and from malicious motives, and that the name of the prosecuting witness is S. Lowe."

The court, "being satisfied therewith, ordered that the same stand as and for the verdict of the jury;" and thereupon ordered "that the defendant F. Keifer be discharged and go hence without day."

Lowe then moved that so much of the verdict as found "that this prosecution was instituted without probable cause and from malicious motives" be set aside, and that he have a new trial in that respect, for the reasons "that the said S. Lowe, upon the trial already had, has not been heard and could not be heard, either in person or by counsel, in his own defence, touching the matter and things above mentioned as stated and contained in said verdict, being neither plaintiff or defendant in this prosecution;" and that the verdict was contrary to the law and the evidence; and that the instructions aforesaid were erroneous; and also moved in arrest of judgment, for the same reasons, and because "he has the right, by the law of the land, to be so heard in his own defence, and to a separate trial concerning his liability as prosecuting witness in this action, which separate trial he hereby demands of this court."

The court overruled both motions; and, upon a further hearing on the verdict, adjudged that "the prosecuting witness, S. Lowe, in the above entitled action, pay all costs of said action, taxed at $1053.40," and be committed to the county jail until he paid the costs or executed a sufficient bond to pay them within six months.

To all these instructions and rulings, and to the judgment aforesaid, Lowe excepted, and tendered a bill of exceptions, which was allowed by the court.

Lowe appealed to the Supreme Court of the State, which affirmed the judgment, upon an opinion of the Supreme Court Commissioners, holding that the constitutionality of section 326 of chapter 82 had been settled by the decision of *In re Ebenhack*, 17 Kansas, 618, (in which the Supreme Court upheld the constitutionality of the similar provision of section 18 of chapter 83, concerning proceedings before justices of the peace for misdemeanors,) and that, according to the decision of the Supreme Court in *State* v. *Zimmerman*, 31 Kansas, 85, as the jury were expressly authorized by the statute to determine both the law and the fact, neither the trial court nor the appellate court of the State had power to interfere with the verdict. 46 Kansas, 255.

A motion for a rehearing was overruled by the Supreme Court of the State in an opinion, which, after citing the decision in *Ebenhack's case*, proceeded and concluded as follows: "After a defendant is acquitted, the State is not entitled to a new trial before a jury as to which party must pay the costs. The prosecuting witness is so connected with the State in the trial that, after the acquittal of the defendant, he cannot demand a re-trial upon the evidence before another jury. If costs are improperly taxed by the court after the acquittal of the defendant, of course a motion can be made for the re-taxation, and a proper inquiry may be had thereon. In this case, it appears that the district court approved the verdict of acquittal, and also the finding of the jury against the prosecuting witness; therefore, in this case, the court below pronounced judgment of acquittal, and for the commitment of the prosecuting witness, in accordance with its own opinion — not merely the opinion of the jury." 47 Kansas, 769, 770.

Lowe thereupon sued out this writ of error, contending that he had been deprived of his liberty or property without due process of law, and had been denied the equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States.

*Mr. George Chandler* for appellant.

No appearance for appellee.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

The code of criminal procedure of the State of Kansas provides that " whenever it shall appear to the court or jury trying the case, that the prosecution has been instituted without probable cause and from malicious motives, the name of the prosecutor shall be ascertained and stated in the finding ; and such prosecutor shall be adjudged to pay the costs, and may be committed to the county jail until the same are paid, or secured to be paid." Kansas Gen. Stat. of 1889, c. 82, § 326.

The only question presented by the record for the determination of this court is whether this enactment, as applied by the Supreme Court of Kansas to this case, contravenes the Fourteenth Amendment of the Constitution of the United States, by depriving Lowe of his liberty or property without due process of law, or by denying him the equal protection of the laws.

Whether the mode of proceeding, prescribed by this statute, and followed in this case, was due process of law, depends upon the question whether it was in substantial accord with the law and usage in England before the Declaration of Independence, and in this country since it became a nation, in similar cases. *Murray* v. *Hoboken Co.*, 18 How. 272, 277 ; *Dent* v. *West Virginia*, 129 U. S. 114, 124.

By the common law, at first, while no costs, *eo nomine*, were awarded to either party, yet a plaintiff who failed to recover in a civil action was amerced *pro falso clamore*. Bac. Ab. Costs, A ; *Day* v. *Woodworth*, 13 How. 363, 372. And from early times the legislature and the courts, in England and America, in order to put a check on unjust litigation, have not only, as a general rule, awarded costs to the party prevailing in a civil action, but have, not infrequently, required actual payment of costs, or security for their payment, from the plaintiff in a civil action, or even from the prosecutor in a criminal proceeding. ·

For instance, plaintiffs have been required, by general statute or by special order, to give security for the costs of the

action, or to pay the costs of a former suit before suing again for the same cause. *Shaw* v. *Wallace*, 2 Dall. 179; *Hurst* v. *Jones*, 4 Dall. 353; *Henderson* v. *Griffin*, 5 Pet. 151, 159. Third persons allowed to intervene, on condition of giving bond to pay costs, may be compelled to do so by attachment, without remitting the payee to suit upon the bond. *Craig* v. *Leitensdorfer*, 127 U. S. 764, 771. And in an information to enforce a charitable trust a relator is required, who may be compelled, if the information is not maintained, to pay the costs. *Attorney General* v. *Smart*, 1 Ves. Sen. 72, and note; *Attorney General* v. *Butler*, 123 Mass. 304, 309.

English statutes, from long before the American Revolution, authorized costs against informers upon a penal statute, or against private prosecutors of an indictment or information, to be awarded by the court, either absolutely, or unless the judge, before whom the trial was had, certified that there was probable cause for the prosecution. Stats. 18 Eliz. c. 5; 27 Eliz. c. 10; 4 W. & M. c. 18, § 1; 13 Geo. III, c. 78, § 64; Bac. Ab. Costs, E; *The King* v. *Heydon*, 1 W. Bl. 356; *S. C.* 3 Burrow, 1304; *The King* v. *Commerell*, 4 M. & S. 203; *The Queen* v. *Steel*, 1 Q. B. D. 482. In like manner, by the act of Congress of May 8, 1792, c. 36, § 5, "if any informer or plaintiff on a penal statute, to whose benefit the penalty or any part thereof, if recovered, is directed by law to accrue, shall discontinue his suit or prosecution, or shall be nonsuit in the same, or if upon trial a verdict shall pass for the defendant, the court shall award to the defendant his costs, unless such informer or plaintiff be an officer of the United States specially authorized to commence such prosecution, and the court before whom the action or information shall be tried, shall at the trial in open court, certify upon record, that there was reasonable cause for commencing the same, in which case no costs shall be adjudged to the defendant." 1 Stat. 277. And that provision has been substantially reënacted in section 975 of the Revised Statutes.

If the statute of Kansas, now in question, had provided that, upon the failure of the prosecution, the prosecutor should be absolutely liable to pay the costs, and should be committed

until he paid or secured them, there could have been no doubt of the validity of the statute. Or if the statute had made him liable for costs unless the court before which the trial took place certified that there was probable cause for instituting the prosecution, its validity would have been equally clear. The liability imposed upon him by the statute is less than in either of the cases supposed. He is not made absolutely liable for the costs; nor is a certificate of probable cause required to protect him from liability. But the burden is thrown upon the defendant of proving want of probable cause, as well as malicious motives, on the part of the prosecutor, before the latter can be charged with the costs.

In the case at bar, there can be no doubt of the prosecutor's identity, for he signed and made oath to the information, and was named in the verdict. Being the actor in the litigation, he had no right to complain of being obliged, if unsuccessful, to pay the costs upon the conditions previously prescribed by the legislature. Whether the question of probable cause for the prosecution, as affecting the question of costs, should be tried and determined by the court or the jury, and with or after the main question of the guilt of the defendant, is matter of convenient practice, not of constitutional right. A prosecution for libel, at least, can hardly be tried without exhibiting to the court and jury the motives and grounds of action of the prosecuting witness. It is not to be doubted that, by virtue of the statute, he had the right, if seasonably claimed, to be heard, and to introduce evidence, at the trial of the case, upon the question whether he instituted the prosecution without probable cause and from malicious motives. The record transmitted to this court omits all the oral testimony offered at the trial, and contains nothing having any tendency to show that at the trial he was denied the opportunity of offering arguments or evidence in support of his good faith and probable cause, or requested of the court any ruling or instruction upon that subject. It was after the verdict had been rendered in accordance with the statute, and after the trial court, "being satisfied therewith," had approved it, that he appears, for the first time, to have asserted — as a ground for setting aside that

part of the verdict which found "that this prosecution was instituted without probable cause and from malicious motives" — that he had not and could not have been heard upon that matter at the trial.

The Supreme Court Commissioners, indeed, expressed an opinion, based upon the decision in *State* v. *Zimmerman*, 31 Kansas, 85, that the finding of the jury could not be reviewed by the court. 46 Kansas, 255. But the Supreme Court of the State, in its opinion delivered upon denying a motion for a rehearing, put the final judgment upon the grounds that the prosecuting witness was so connected with the State in the trial of the prosecution, that he was not entitled to a separate trial by another jury upon the question of his liability for costs; and that "the court below pronounced judgment of acquittal, and for the commitment of the prosecuting witness, in accordance with its own opinion — not merely the opinion of the jury." 47 Kansas, 769, 770. And there is nothing in the statute, or in either of the opinions delivered below, to countenance the theory that the prosecutor had not the right to be heard, at the trial before the jury, upon every question which was to be determined by their verdict. If any evidence, offered upon one of the issues on trial, is incompetent upon the other issue, its effect must be restricted accordingly by the instructions of the court, as in the case of two persons indicted jointly, pleading separately, and tried together. *Sparf* v. *United States*, 156 U. S. 51, 58.

The necessary conclusion is that the proceeding by which judgment for the costs of the prosecution was rendered against the present plaintiff in error was due process of law.

As the statute is applicable to all persons under like circumstances, and does not subject the individual to an arbitrary exercise of power, it has not denied him the equal protection of the laws. *Duncan* v. *Missouri*, 152 U. S. 377.

*Judgment affirmed.*

MR. JUSTICE BROWN dissenting.

Did the statute of Kansas require broadly that the prosecutor in every criminal case should be held liable for costs, I

should have felt much less hesitation in acceding to the views of the majority of the court, since the name of the prosecutor can easily be ascertained, either from the original complaint, by an inspection of the record, or from the testimony upon the trial, and I have no doubt that it is within the competency of the legislature to make him responsible for such costs.

But the difficulty with the statute in question is that it makes him responsible only upon the contingency that the prosecution was instituted without probable cause and from malicious motives, and authorizes the jury to find this fact from the testimony introduced upon the trial of the principal case, without giving the prosecutor any opportunity of rebutting such testimony, by proving that the prosecution was instituted in good faith, and with probable cause to believe that the defendant was guilty. Such evidence would be obviously incompetent in the principal case, since the very testimony that would tend to show probable cause and acquit him of malicious motives would also tend to the prejudice of the defendant, and would be inadmissible against him. For example, suppose A should make a complaint against B for larceny, and upon the trial, either by reason of the death, illness or absence of his witnesses, or through the efforts of B and his friends to spirit them away, he might be unable to offer any testimony against him, of course B would be acquitted; and A would be adjudged guilty of having instituted the prosecution maliciously and without probable cause, notwithstanding that he might have been able to show that he had made the complaint upon the statement of these witnesses that they had seen B take the property, and had afterwards seen it in his possession. Such testimony would obviously not have been admissible upon the trial of B, since it would not only have been hearsay, but it would have seriously prejudiced him in the eyes of the jury. At the same time, it would be obviously necessary to the exoneration of A.

It is a fatal objection to the statute that it undertakes to settle in one trial the rights of two parties to a criminal cause whose interests are adverse, and to try two distinct and disconnected issues, viz., the guilt of the principal defendant and

the innocence of the prosecutor upon testimony applicable to but one of such issues. It seems to me entirely clear that, if the prosecutor can be subjected to a judgment for costs and to imprisonment, without being able to lay before the jury the testimony which would tend to his acquittal, he is deprived of his liberty and property without due process of law, within the meaning of the Fourteenth Amendment.

Notwithstanding that this was a prosecution for libel, in which it might be expected that the motives of the prosecutor would appear more clearly than in ordinary prosecutions, the statute appears to have worked a peculiar hardship upon the defendant. As stated in the opinion of the court, after the verdict was rendered, Lowe moved to set the same aside so far as it bore against him, upon the ground that he had not been heard, and could not be heard, in his own defence, and also moved in arrest of judgment upon the same ground, but the court denied both motions, and upon appeal to the Supreme Court, that court held, following in that particular *State* v. *Zimmerman*, 31 Kansas, 85, that, under section 326 of the Criminal Code, above cited, the court had no power to set aside a verdict of acquittal, and that it was equally powerless to set aside the verdict against the prosecutor, inasmuch as it was a part of the verdict of acquittal. In delivering the opinion, the court says : "The force of another universal practice of courts. everywhere ought to be adverted to, and that is that when a jury returns a verdict of not guilty in a criminal case the trial court has no power to set it aside or modify it in any respect. These findings against the prosecuting witness were a part of a verdict of a jury in a criminal case, wherein express power by statutory enactment is given a jury to determine both the law and the facts. The trial court has no power to interfere with that verdict in any prejudicial respect, and this court is as powerless as the court below." In neither the principal opinion nor in the opinion upon motion for a rehearing was there any intimation that the prosecutor had been or could be heard in his own defence, notwithstanding his whole case was rested upon that ground.

It results then that, under the construction given by the

Supreme Court to this statute, the verdict and judgment against the prosecutor, however unjust it may be, is one which no court has power to set aside, because it is a part of the verdict of acquittal of the defendant in the principal action, and the court cannot set aside one part of the verdict without setting aside the whole. If any further argument were needed to satisfy one of the great injustice of this statute, it would seem that this construction supplied it.

The unnecessary hardship of the statute is the more manifest when compared with certain sections of the Revised Statutes of the United States, having a similar object. Thus, by section 970, when, in certain prosecutions instituted by a collector of customs or other officer, judgment is rendered for the claimant, but it appears to the court that there was reasonable cause for the seizure, the court shall cause the proper certificate thereof to be entered, and the claimant shall not be entitled to costs nor the prosecutor be liable to suit. In such case the certificate is granted or refused by the court upon a hearing of both parties subsequent to the trial of the main issue and upon motion of the United States for such certificate. *Averill* v. *Smith,* 17 Wall. 82; *United States* v. *Abatoir Place,* 106 U. S. 160; *United States* v. *Frerichs,* 16 Blatch. 547; *The City of Mexico,* 25 Fed. Rep. 924.

A similar procedure is contemplated by section 975, making the informer or plaintiff in a penal statute liable for costs, unless he be an officer of the United States authorized to commence such prosecution, and the court, at the trial in open court, certifies upon the record that there was reasonable cause for commencing the same. So also, by section 989, it is made the duty of the court to certify that there was probable cause for certain acts done by the collector or other officer, under which it has been decided that the certificate may be granted by another judge than the one before whom the verdict was rendered, and after an execution has issued, as well as before. *Cox* v. *Barney,* 14 Blatch. 289. In all these cases a separate finding by the court is evidently contemplated.

Indeed, in section 327 of the Criminal Procedure of Kansas, immediately following the section by authority of which

judgment was entered in this case, it is provided that "if a person charged with a felony shall be discharged by the officer taking his examination, or if recognized or committed for any such offence, and no indictment or information be preferred against him, the cost shall be paid by the prosecuting witness, unless the court shall find that there was probable cause for instituting the prosecution, and that the same was not instituted for malicious motives." This section is apparently not obnoxious to the objection above made, since it contemplates a hearing by the court upon the question of probable cause and the motive for the prosecution.

In *State* v. *Ensign*, 11 Neb. 529, the Supreme Court of Nebraska, construing a statute similar to the one in question, held that the legislature had exceeded its power. "The mere failure," said the court, "to prove the charge made in a complaint is not conclusive evidence of the want of probable cause or of malice. A party may be convinced of the existence of a tippling or gambling shop at a certain place, or of other means by which the morals of the community are corrupted or debased, and yet upon the trial, from the peculiar or secret nature of the business, may be unable to prove the charge. Does such a case upon the trial assume the form of a contest between the accused and the accuser as to which shall be imprisoned? We think not."

I do not think it constitutional to so frame a criminal law as to make it incumbent upon the prosecutor to enter a complaint at the peril of being mulcted in costs in case the prosecution was malicious, without giving him an opportunity of showing that the complaint was in good faith and with probable cause to believe that the defendant was guilty.

For these reasons I am unable to concur in the opinion of the court.